IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DR. BRIANCE MASCARENHAS,<br><br>   Plaintiff,<br><br> v.<br><br>RUTGERS, THE STATE UNIVERSITY,<br><br>   Defendant. | HONORABLE RENÉE MARIE BUMB<br><br>   Civil Action<br>No. 16-5348 (RMB-LHG)<br><br>   **OPINION** |

APPEARANCES:

Sonya Malhotra Sumner, Esq.
SUMNER LAW LLP
372 Andover Place
Robbinsville, NJ 08691
 -and-
Mary J. Whateley, Esq.
Michael H. Sussman, Esq. (pro hac vice)
SUSSMAN & WATKINS, ESQS
1 Railroad Avenue
P.O. Box 1005
Goshen, NY 10924
 Attorneys for Plaintiff

James Edward Patterson, Esq.
John James Peirano, Jr., Esq.
Michael O'B. Boldt, Esq.
MCELROY, DEUTSCH, MULVANEY & CARPENTER,
LLP 1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962
 Attorneys for Defendant

**BUMB**, District Judge:

## I.   INTRODUCTION

In this employment discrimination action, Plaintiff Dr. Briance Mascarenhas, a Professor at the Rutgers University Camden School of Business, alleges that he was denied a promotion on the basis of a known vision disability in violation of the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101, et seq. Defendant Rutgers, the State University, now moves for summary judgment. The principal issues to be decided are whether Plaintiff has made a prima facie case for disability discrimination and, if so, whether the legitimate, non-discriminatory reasons Defendant has proffered for denying Plaintiff's promotion are pretextual. For the reasons discussed below, the Court finds that Plaintiff has established a prima facie case for disability discrimination, but that Plaintiff has not shown pretext. Accordingly, Defendant's motion for summary judgment will be granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

Plaintiff Dr. Briance Mascarenhas ("Dr. Mascarenhas" or "Plaintiff") suffers from progressive visual impairment.[2] (Pl.'s CSMF ¶ 29; Def.'s Reply to Pl.'s CSMF ¶ 29.) He was hired at the Rutgers University Camden School of Business by Defendant Rutgers, the State University ("Rutgers," "the University," or "Defendant"), at the rank of Associate Professor with tenure in 1990 and, shortly thereafter, was promoted to the rank of Professor I. (Def.'s SMF ¶ 2; Pl.'s RSMF ¶ 2.) Plaintiff still holds the position of Professor I. (Pl.'s CSMF ¶ 6; Def.'s Reply to Pl.'s CSMF ¶ 6.)

As discussed below, Plaintiff has applied for a promotion to Distinguished Professor, formerly known as "Professor II," on several occasions. Distinguished Professor is the highest

_____

[1] For purposes of the instant motion and pursuant to Local Civil Rule 56.1, the Court looks to the Complaint [Docket Item 1] when appropriate, Defendants' Statement of Undisputed Material Facts ("Def.'s SMF") [Docket Item 34-2], Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ("Pl.'s RSMF") and Counterstatement of Undisputed Material Facts and ("Pl.'s CSMF") [Docket Item 38-1], Defendants' Reply to Plaintiff's Counterstatement of Undisputed Material Facts ("Def.'s Reply to Pl.'s CSMF") [Docket Item 47-5], and related exhibits and documents. The Court distills this version of the record in the light most favorable to Plaintiff, the non-moving party.

[2] Plaintiff's progressive visual impairment is caused by Pellucid Marginal Degeneration Keratoconus, Corneal Hydrops from the rupture of the Descemet's membrane and Photobia from Dry Eye Syndrome. (Pl.'s CSMF ¶ 29; Def.'s Reply to Pl.'s CSMF ¶ 29.)

professorial rank at Rutgers and, according to Rutgers University Policy 60.5.17, the position is:

> [R]eserved for those faculty in the University . . . who have achieved scholarly eminence in their discipline and fields of inquiry. The standard for promotion to Distinguished Professor is significantly higher than that applied in promotion to Professor. . . . The most significant area of consideration in determining promotion to Distinguished Professor for general teaching/research faculty is scholarship; . . . Only those faculty who have demonstrated outstanding achievement in those areas by earning significant recognition inside and outside the University are eligible for promotion to Distinguished Professor. Typically, such recognition is reflected in national and international reputation in one's discipline. Teaching and service also apply to the general evaluation of a candidate for promotion to Distinguished Professor. A candidate for promotion to Distinguished Professor should be an exemplary member of the University faculty who consistently has demonstrated a high standard of achievement in all professional roles.

(Def.'s SMF ¶ 1; Pl.'s RSMF ¶ 1.) Applications for academic promotion, including to the rank of Distinguished Professor, are reviewed pursuant to the University's established promotion process. (Def.'s SMF ¶ 3; Pl.'s RSMF ¶ 3.) This process provides for evaluation at the Departmental level, then by the Dean of the candidate's college or school, and then, if the lower evaluations are sufficiently successful, by the University's Promotion Review Committee ("PRC").[3] (Id.) As part of the evaluation process, the

---

[3]     The PRC is the University-wide body that considers all applications for academic promotion and tenure from the University's three campuses, including Camden, and is comprised of faculty members appointed by the President of the University. (Def.'s SMF ¶ 4; Pl.'s RSMF ¶ 4.) The PRC is responsible for

Dean solicits external confidential letters of evaluation ("outside letters") from noted scholars in the candidate's field located outside of the University, and these outside letters are reviewed and considered throughout the evaluation process. (Def.'s SMF ¶ 5; Pl.'s RSMF ¶ 5.)

Plaintiff alleges he was discriminated against by Defendant in 2014-15 when he applied for a promotion to the position of Professor II. Although Plaintiff had applied four times before for a promotion to the position, as discussed next, Plaintiff does not allege discriminatory conduct on the part of Defendant. (Def.'s SMF ¶ 2; Pl.'s RSMF ¶ 2.)

**First**, Plaintiff applied for a promotion to Professor II in 1996-1997, but his application was denied when the Department unanimously voted against it and the Dean voted against it. (Def.'s SMF ¶ 6; Pl.'s RSMF ¶ 6.)

**Second**, Plaintiff applied for a promotion to Professor II in 1999-2000, but his application was denied after the PRC recommended against promotion at that time. (Def.'s SMF ¶ 7; Pl.'s RSMF ¶ 7.) In relevant part, the PRC explained:

> Professor Mascarenhas is an excellent teacher with a strong service record in the University. He is a productive scholar who has a solid body of work, but the Committee concludes that Professor Mascarenhas' scholarship has not yet reached the level of national

reviewing the promotion materials for each candidate (the "promotion packet") and making a recommendation to the President for promotion or denial of promotion. (Id.)

and international impact expected for promotion to the
rank of Professor II. The committee looks forward to
reviewing Professor Mascarenhas' packet again when his
scholarship has achieved that level of recognition.

(Id.)

**Third**, in 2007-2008, Plaintiff again applied for promotion to

Professor II. (Def.'s SMF ¶ 8; Pl.'s RSMF ¶ 8.) This time,

Plaintiff's Department voted 4-2 in favor of a promotion and the

Dean also recommended him for a promotion. (Id.) The PRC, however,

recommended that Plaintiff not be promoted because:

> Professor Briance Mascarenhas is judged to be a good
> teacher. He has developed a number of courses and
> received awards for his teaching. He has supervised a
> number of graduate and undergraduate independent studies
> and has served on four doctoral dissertation committees.
> His service to his department and school has been good.
> He has published a number of articles and book chapters,
> and he has guest edited special issues of journals. Dr.
> Mascarenhas' record does not yet demonstrate that he has
> attained the senior leadership positions in professional
> organizations, sustained major funding, or major prizes
> and awards that would indicate the highest level of
> impact or recognition in his field. Based on a thorough
> examination of the evidence in relation to the criteria
> for evaluation established by University Regulations,
> the Committee concludes that Dr. Mascarenhas has not yet
> achieved the University-wide standard of quality
> necessary to justify promotion to Professor II.

(Id.)

**Fourth**, Plaintiff again applied for a promotion in 2011-2012.

(Def.'s SMF ¶ 9; Pl.'s RSMF ¶ 9.) This promotion packet included

seven outside letters, including six supporting Plaintiff for

promotion, as well as a seventh letter which stated, in relevant

part, "over the past 20 years . . . Professor Mascarenhas'

scholarship has declined in importance as indicated by citations and ranking of journals." (Def.'s SMF ¶ 11; Pl.'s RSMF ¶ 11.) Plaintiff's Department voted 4-3 in favor of promotion, as did the Dean, Dr. Jaishankar Ganesh ("Dean Ganesh"). (Def.'s SMF ¶ 9; Pl.'s RSMF ¶ 9.) But the PRC again voted against promotion, and explained its recommendation as follows:

> Dr. Briance Mascarenhas is a productive scholar, who has given a number of invited talks. He is a good teacher, who has received teaching awards. His service to the university has been good, and he has been closely engaged with the community in Camden. However, Dr. Mascarenhas' record does not reflect the major prizes or significant awards that would indicate the level of impact or examination of the evidence in relation to the criteria for evaluation established by University Regulations, the Committee concludes that Dr. Briance Mascarenhas has not yet achieved the University-wide standard of accomplishment to justify promotion to Professor II.

(Id.)

Notably, Plaintiff did not assert he had a disability due to his visual impairment during **any** of these four promotion processes. (Def.'s SMF ¶ 10; Pl.'s RSMF ¶ 10.) Thus, Plaintiff does not allege in this lawsuit disability discrimination as a result of any of these four promotion processes. (See generally Compl.)

Plaintiff subsequently filed a grievance under his union contract alleging procedural deficiencies in the fourth evaluation process. (Def.'s SMF ¶ 11; Pl.'s RSMF ¶ 11.) As a result of the grievance, the University, Plaintiff, and his Union agreed to a "remanded evaluation" to occur in 2014-2015. (Id.) The terms of

the remanded evaluation were set forth in a signed written agreement executed on March 21, 2014, wherein the parties agreed Plaintiff would be re-evaluated for promotion to Professor II a fifth time, using the same promotion packet that had been used in 2011-2012, including the same seven outside letters, along with addenda to update information about activities that had been included in the 2011-2012 promotion packet. (Id.)

The remanded evaluation process began in the fall of 2014. (Def.'s SMF ¶ 12; Pl.'s RSMF ¶ 12.) In October 2014, Plaintiff provided Defendant's Campus Human Resources officer, Gregory O'Shea, for the first time, medical documentation explaining his vision loss and its cause, a genetic degenerative eye disease. (Pl.'s CSMF ¶ 37.) Around this time, Plaintiff also communicated to Dean Ganesh that he had a disability, and he requested that he not be assigned to teach in Princeton, New Jersey because of the driving involved and his vision issues. (Id. at ¶ 36.) In or around December 2014, a written statement concerning Plaintiff's vision disability was included in the materials submitted to the Dean and PRC. (Def.'s SMF ¶ 12; Pl.'s RSMF ¶ 12.) This submission included a section that described Plaintiff's disability and his broadening contributions to Rutgers concomitant with his recent vision issues. (Pl.'s CSMF ¶ 35.)

According to Plaintiff, his vision disability affects his capacity to read and engage in scholarship at the same level as

earlier in his career and at the same level as others with his level of knowledge and intellectual rigor. (Id. at ¶ 30.) In recent years, Plaintiff's disability also caused a decline in scholarly publications, particularly his sole authorship of premier publications, due to his need to rely on others to assist him in reading. (Id. at ¶ 31.) Aware of the limitations imposed by his disability, Plaintiff shifted toward making contributions to the University that are less reading-intensive. (Id. at ¶ 32.)

On October 2, 2014, Plaintiff's Department voted 4-2 to recommend Plaintiff for promotion. (Def.'s SMF ¶ 12; Pl.'s RSMF ¶ 12.) Dean Ganesh then recommended Plaintiff for promotion and told the PRC that Plaintiff's scholarship was exemplary, that Plaintiff had several sole-authored publications in top journals, "which is a rarity," and that Plaintiff's recent scholarship was equally impactful when compared with publications authored earlier in his career. (Pl.'s CSMF ¶¶ 14-16.) According to Dean Ganesh, no PRC members commented upon a decline in single-authored papers later in Plaintiff's career, nor did any PRC member question the Dean about Plaintiff's vision disability and its relationship to his scholarly productivity. (Id. at ¶¶ 17-18.)

In a decision issued April 2, 2015, the PRC recommended against promoting Plaintiff to Professor II. (Def.'s SMF ¶ 13; Pl.'s RSMF ¶ 13.) In relevant part, the PRC explained:

Dr. Briance Mascarenhas is a respected scholar who has contributed to a number of research areas. His work has received some small grant support. He is an effective teacher who has developed courses and received awards for his teaching. His service has been strong, both to the university and to the community. Dr. Mascarenhas' record does not yet reflect the major awards or elected honors that would indicate the level of impact or international recognition in his field expected for promotion at this level. Based on a thorough examination of the evidence in relation to the criteria for evaluation established by University Regulations, the Committee concludes that Dr. Briance Mascarenhas has not yet achieved the University-wide standard of accomplishment necessary to justify promotion to Professor II.

(Id.) At his deposition, the Chair of the PRC, Dr. Richard Edwards, further discussed the PRC's reasons for recommending against promotion in 2015, and testified as follows:

[T]here was not really evidence of anything that was significantly different in terms of his scholarship or other kind of things that we would like to see in a candidate being considered . . . . [Successful candidates] need to have a body of scholarship that's substantial, that is progressive beyond what they've had for promotion to [P]rofessor [I]. Markers might be . . . . the kind of things, like major awards, national, international recognitions, et cetera.

(Def.'s SMF ¶ 14; Pl.'s RSMF ¶ 14.) Ultimately, Plaintiff was not promoted to Professor II. (Pl.'s CSMF ¶¶ 23-27.) Following the denial of his promotion, Plaintiff appealed to the administration-appointed Faculty Appeals Board, which sustained the denial of promotion. (Id. at ¶ 28.)

**B.  Procedural History**

Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about

January 21, 2016. (Def.'s SMF ¶ 16; Pl.'s RSMF ¶ 16.) The EEOC did not make any determination as to the Charge, but the Department of Justice issued a right to sue letter on or about June 29, 2016. (Id. at ¶ 4.)

On September 1, 2016, Plaintiff filed a one-count Complaint in the U.S. District Court for the District of New Jersey alleging that he was denied a promotion to the rank of Professor II in 2014-2015 because of his vision disability, in violation of the Americans with Disability Act, 42 U.S.C. § 12101, et seq. [Docket Item 1.] Following the completion of discovery, Defendant filed the pending motion for summary judgment. [Docket Item 34.] Plaintiff filed opposition [Docket Item 38; see also Docket Items 36 & 37], and Defendant filed a reply brief. [Docket Item 47.] The matter is now fully briefed and ripe for disposition. The Court decides the motion without oral argument, pursuant to Fed. R. Civ. P. 78.

## III. STANDARD OF REVIEW

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a

genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. The non-moving party "need not match, item for item, each piece of evidence proffered by the movant," but must present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, here the plaintiff, and must provide that party the benefit of all reasonable inferences. Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014). However, any such inferences "must flow directly from admissible evidence [,]" because "'an inference based upon [ ] speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'" Halsey, 750 F.3d at 287 (quoting Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n. 12 (3d Cir. 1990); citing Anderson, 477 U.S. at 255).

## IV. DISCUSSION

The burden shifting framework set forth in <u>McDonnell Douglas</u> <u>Corp. v. Green</u>, 411 U.S. 792 (1973), applies to discrimination claims under the ADA. <u>See</u> <u>Walton v. Mental Health Ass'n of</u> <u>Southeastern Pa.</u>, 168 F.3d 661, 668 (3d Cir. 1999) (citing <u>Lawrence</u> <u>v. Nat'l Westminster Bank N.J.</u>, 98 F.3d 61, 68 & n.7 (3d Cir. 1996)).

The <u>McDonnell Douglas</u> analysis proceeds in three stages. First, the plaintiff must establish a prima facie case of discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 802. Second, once a plaintiff makes such a showing, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." <u>Walton</u>, 168 F.3d at 668 (quoting <u>Fuentes v. Persie</u>, 32 F.3d 759, 763 (3d Cir. 1994). Finally, if a defendant does this, the burden shifts back to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." <u>Jones v. School Dist. Of</u> <u>Philadelphia</u>, 198 F.3d 403, 410 (3d Cir. 1999). Although this burden of production shifts from party to party, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Id.</u>

**A.    Plaintiff's prima facie case**

To establish a prima facie case of disability discrimination, as here, a plaintiff must show that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998) (citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996)). Neither party disputes, for purposes of the instant motion, that Plaintiff has a disability or that he sustained an adverse employment action. Defendant only argues Plaintiff is not an "otherwise qualified individual" within the meaning of the ADA. (Def.'s Br. at 11-13.)

Under the ADA, an "otherwise qualified individual" is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." To determine whether an employee fits this definition, courts employ a two-step test. Gaul, 134 F.3d at 580. First, the court must consider whether "the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." Id. (quoting 29 C.F.R. § 1630, App. at 353). Second, the court must consider "whether or not the

individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." Id. (quoting 29 C.F.R. § 1630, App. at 353). "The determination of whether an individual with a disability is qualified is made at the time of the employment decision," id. (quoting 29 C.F.R. § 1630, App. at 353-54), and "the burden is on the employee to prove that he is an 'otherwise qualified' individual," Shiring, 90 F.3d at 832 (quoting Buckingham v. United States, 998 F.2d 735, 739-40 (9th Cir. 1993)).

Even by Defendant's account, Plaintiff is good at his job. As discussed above, during five different promotion review processes, the PRC regularly noted that Plaintiff was a respected scholar, a good (or excellent) teacher, and/or a valued member of the Rutgers and Camden communities. During the two most recent promotion review processes, Plaintiff was recommended for promotion to Professor II by his Department and also received several outside letters supporting his promotion. Plaintiff also consistently maintained Dean Ganesh's strong endorsement for promotion. The Court finds for purposes of the instant motion that, with respect to the Professor II position, Plaintiff "was sufficiently qualified to be among those persons from whom a selection, to some extent discretionary, would be made." Roebuck v. Drexel Univ., 852 F.2d 715, 726 (3d Cir. 1988) (quoting Banerjee v. Bd. of Trustees of Smith Coll., 648 F.2d 61, 63 (1st Cir. 1981)). Accordingly,

Plaintiff has put forth adequate evidence to establish that he is an "otherwise qualified individual" under the ADA. He has, therefore, established a prima facie case for disability discrimination.

**B.    Defendant's legitimate, non-discriminatory reasons for denying Plaintiff's promotion to Professor II**

Defendant next argues that, even if Plaintiff could establish a prima facie case of discrimination under the ADA, Rutgers has articulated several legitimate, non-discriminatory reasons for not promoting Plaintiff to Professor II in 2014-2015. (Def.'s Br. at 13-14.) For example, as noted above and repeated below, the PRC stated in its April 2, 2015 decision:

> Dr. Briance Mascarenhas is a respected scholar who has contributed to a number of research areas. His work has received some small grant support. He is an effective teacher who has developed courses and received awards for his teaching. His service has been strong, both to the university and to the community. Dr. Mascarenhas' record does not yet reflect the major awards or elected honors that would indicate the level of impact or international recognition in his field expected for promotion at this level. Based on a thorough examination of the evidence in relation to the criteria for evaluation established by University Regulations, the Committee concludes that Dr. Briance Mascarenhas has not yet achieved the University-wide standard of accomplishment necessary to justify promotion to Professor II.

(Def.'s SMF ¶ 13; Pl.'s RSMF ¶ 13.) In other words, the PRC recommended against promoting Plaintiff to Professor II at this time, as it had on four previous occasions, "because the quantity and impact of his scholarship did not meet the University's

standards to justify promotion." <u>Harel v. Rutgers</u>, 5 F. Supp. 2d 246, 270 (D.N.J. 1998), <u>aff'd</u> 191 F.3d 444 (3d Cir. 1999). On this record, the Court finds Defendant has satisfied its burden and Plaintiff does not appear to argue otherwise. Thus, Plaintiff must show that the reasons proffered by Defendant are just a pretext for unlawful disability discrimination.

### C.   Plaintiff's rebuttal

"[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that **<u>each</u>** of the employer's proffered non-discriminatory reasons . . . was either a <u>post</u> <u>hoc</u> fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994) (emphasis in original) (internal citation omitted).

Plaintiff claims that Defendant discriminated against him because, shortly after the PRC became aware of his vision impairment in October 2014, he was denied a promotion to Professor II. Plaintiff's argument that Defendant's proffered reasons for denying his promotion are pretext can be summarized as follows: (1) Plaintiff's Department and Dean Ganesh supported his promotion in 2014-2015, but the PRC ignored those recommendations; (2) Rutgers' policy does not explicitly mention "major awards or elected honors" as relevant factors for promotion to Professor II,

yet these factors were referenced in the PRC's April 2, 2015 decision; and (3) Plaintiff's vision impairment caused a recent decline in publication and reduced trend of productivity and the PRC failed to consider other activities that he engaged in to compensate for diminished scholarship. (See Pl.'s Br. at 18-21.)

The Court finds that "[t]he record shows no more than a denial of promotion as a result of a dispute over qualifications." Molthan v. Temple Univ. of Com. Sys. of Higher Educ., 778 F.2d 955, 962 (3d Cir. 1985). Even though the Department and Dean recommended promotion, the PRC recommended against promoting Plaintiff to Professor II in 2014-2015 because, according to them, "Dr. Mascarenhas' record does not yet reflect the major awards or elected honors that would indicate the level of impact or international recognition in his field expected for promotion at this level." (Def.'s SMF ¶ 13; Pl.'s RSMF ¶ 13.) In 2011-2012, years before Plaintiff gave notice that he had a vision impairment, the PRC recommended against promotion for virtually identical reasons, stating: "Dr. Mascarenhas' record does not reflect the major prizes or significant awards that would indicate the level of impact or examination of the evidence in relation to the criteria for evaluation established by University Regulations." (Def.'s SMF ¶¶ 9-10; Pl.'s RSMF ¶¶ 9-10.)[4] Moreover, as discussed

---

[4]    Indeed, Defendant has introduced evidence – undisputed by Plaintiff – that the PRC, against the Dean's and Department's

18

above, Plaintiff was denied promotion to Professor II on three additional occasions **before** ever alleging vision disability. These four pre-disability decisions strongly weigh against a finding of pretext with respect to the 2014-2015 decision at issue in this litigation. See <u>Walker v. U.S. Sec'y of the Air Force</u>, 7 F. Supp. 3d 438, 458-59 (D.N.J. 2014) ("The similarity of feedback from before and after the disclosure [of a disability] militates against any finding of pretext.").

Moreover, as Defendant correctly points out (see Def.'s Reply Br. [Docket Item 47] at 17-18), none of Plaintiff's purported comparators – namely, Milton Leontiades, Mitchell Koza, and Ken Kendall – evince evidence of pretext because Plaintiff offers nothing as to their disability, qualifications, or promotion evaluations. Thus, <u>Bennun v. Rutgers</u>, 737 F. Supp. 1393 (D.N.J. 1990) - a case in which the plaintiff had provided compelling and detailed comparative evidence concerning the promotion application of a similarly-situated colleague not in the protected class - is clearly distinguishable from the current case.

Simply, the issue before the Court is not whether Rutgers, in exercising its academic judgment, could or should have promoted

recommendation, denied another "comparator" professor, Dr. Maureen Morrin, in 2011-12 for the same reason in 2012. (Ex. A to Lee Reply Decl. [Docket Item 47-3] at 4-23.) Dr. Morrin had no disability. (Ganesh Aff. [Docket Item 47-2] at ¶ 3.)

Plaintiff to Professor II; the issue is whether Defendant's proffered reasons were pretextual. "To discredit the employer's proffered reason, . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." <u>Fuentes</u>, 32 F.3d at 765. "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions, in the employer's proffered legitimate reasons for its action that a reasonable fact finder **could** rationally find them 'unworthy of credence,' . . . and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" <u>Id.</u> (emphasis in original) (internal citation omitted). On this record, no reasonable factfinder could so conclude because Defendant's proffered reasons for denying Plaintiff a promotion in 2014-2015 were substantially the same as those given on four separate occasions before Plaintiff's vision disability was known to Defendant. Indeed, Plaintiff has adduced no evidence that the PRC in recommending against promotion – contrary to the Department's and Dean's recommendation to promote – even considered or discussed Plaintiff's disability. Thus, Plaintiff has provided insufficient evidence to raise a viable inference of pretext.

## V.  CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment. The accompanying Order will be entered.


**August 15, 2019**                    s/Renée Marie Bumb
Date                                   RENÉE MARIE BUMB
                                       U.S. District Judge